**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                                          No. CR 24-0375 JB

SHERYL WILLIAMS STAPLETON
and JOSEPH JOHNSON,

     Defendants.

**THE COURT'S FOURTH PROPOSED FINAL JURY INSTRUCTIONS**
(with citations)

**INSTRUCTION NO. 1**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case -- for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the jury room, so you need not take notes.

**UNITED STATES' REQUESTED INSTRUCTION NO. 2**, at 13, filed July 9, 2026 (Doc. 127)

Tenth Circuit Pattern Jury Instructions Criminal **1.03**, at 7 (2026)(**INTRODUCTION TO FINAL INSTRUCTIONS**).

**INSTRUCTION NO. 2**

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**UNITED STATES' REQUESTED INSTRUCTION NO. 3**, at 14, filed July 9, 2026 (Doc. 127)

Tenth Circuit Pattern Jury Instructions Criminal **1.04**, at 8 (2026)(**DUTY TO FOLLOW INSTRUCTIONS**).

**INSTRUCTION NO. 3**

The government has the burden of proving Defendants Sheryl Williams Stapleton and Joseph Johnson guilty beyond a reasonable doubt. The law does not require Ms. Stapleton or Mr. Johnson to prove their innocence or produce any evidence at all. The government has the burden of proving Ms. Stapleton and Mr. Johnson guilty beyond a reasonable doubt, and if it fails to do so, you must find Ms. Stapleton and Mr. Johnson not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of Ms. Stapleton's and Mr. Johnson's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning Ms. Stapleton's and Mr. Johnson's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that Ms. Stapleton and Mr. Johnson are guilty of the crime charged, you must find Ms. Stapleton and Mr. Johnson guilty. If, on the other hand, you think there is a real possibility that Ms. Stapleton and Mr. Johnson are not guilty, you must give Ms. Stapleton or Mr. Johnson the benefit of the doubt and find Ms. Stapleton and Mr. Johnson not guilty.

**UNITED STATES' REQUESTED INSTRUCTION NO. 4**, at 15, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.05**, at 9 (2026)(**PRESUMPTION OF INNOCENCE -- BURDEN OF PROOF -- REASONABLE DOUBT**)(modified to substitute "government" with "United States" and "defendants" with "he" and "him").

**INSTRUCTION NO. 4**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. **I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.** And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said **or what an exhibit might have shown.** These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**UNITED STATES' REQUESTED INSTRUCTION NO. 5**, at 16, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.06**, at 11 (2026)(**EVIDENCE -- DEFINED**)(adapted)

**INSTRUCTION NO. 5**

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

**UNITED STATES' REQUESTED INSTRUCTION NO. 6**, at 17, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.07**, at 13 (2026)(**EVIDENCE -- DIRECT AND CIRCUMSTANTIAL -- INFERENCES**).

**INSTRUCTION NO. 6**

I remind you that it is your job to decide whether the government has proved the guilt of Ms. Stapleton and Mr. Johnson beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses **[including Ms. Stapleton and Mr. Johnson]**, who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with the government, Ms. Stapleton, or Mr. Johnson? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

**[The testimony of Ms. Stapleton and Mr. Johnson should be weighed and their credibility evaluated in the same way as that of any other witness.]**

- 8 -

**[Ms. Stapleton and Mr. Johnson did not testify and I remind you that you cannot consider this decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to Ms. Stapleton and Mr. Johnson the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that Ms. Stapleton and Mr. Johnson do not take the witness stand and testify or call any witnesses.]**

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

**UNITED STATES' REQUESTED INSTRUCTION NO. 7**, at 18-19, filed July 9, 2026 (Doc. 127)(modified to substitute "government" with "United States).

**UNITED STATES' REQUESTED INSTRUCTION NO. 8**, at 20, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.08.**, at 14-15 (2026)(**CREDIBILITY OF WITNESSES**)(modified to substitute "government" with "United States").

Tenth Circuit Pattern Jury Instructions Criminal **1.08.1**, at 16 (2026)(**NON-TESTIFYING DEFENDANT**)(modified to replace "his" with "defendant").

**INSTRUCTION NO. 7**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

**UNITED STATES' REQUESTED INSTRUCTION NO. 10**, at 22, filed July 9, 2026 (Doc. 127)

Tenth Circuit Pattern Jury Instructions Criminal **1.41**, at 60 (2026)(**SUMMARIES AND CHARTS Not Received in Evidence**).

**INSTRUCTION NO. 8**

The Grand Jury charges:

Introduction

1.      At all times relevant to this Indictment, the defendant, **SHERYL WILLIAMS STAPLETON** was an agent of Albuquerque Public Schools (APS), a local government agency operating in Bernalillo County, in the District of New Mexico.

2.      **STAPLETON** also was a New Mexico State Representative for District 19 in Bernalillo County from 1995 until 2021.  In the New Mexico House of Representatives, **STAPLETON** served on various committees including the Education Committee, and was the majority floor leader from 2017 until 2021.

3.      The United States Department of Education provides hundreds of millions of dollars to state and local school districts for career and technical education (CTE) programs pursuant to the Carl D. Perkins Vocational and Technical Education Act[1] (the Perkins Act).  In New Mexico, Perkins funding goes to the New Mexico Public Education Department (NMPED), and NMPED then allocates the federal funds to school districts across the state.

4.      From at least 2013 through 2021, APS received more than $10,000 in federal Perkins funds from the U.S. Department of Education in each calendar year.

5.      In her official capacity at APS, **STAPLETON** was the Director of the Perkins Project and the CTE Coordinator.  It was her responsibility to allocate and administer the Perkins funds that APS received.

6.      Robotics Management Learning Systems (Robotics) is a Washington, D.C.

---

[1] This term refers to a series of federal acts including the Carl D. Perkins Vocational and Technical Education Act of 1984 and its reauthorizations in 1990, 1998, 2006, and 2018.

company owned and operated by **STAPLETON**'s close personal friend, the defendant, **JOSEPH JOHNSON**.  Robotics held the software license and copyright for CyberQuest, a computer learning program that teachers can use in the classroom.

7.      From about July 1, 2013, through June 30, 2020, **STAPLETON** directed approximately 40% of APS's non-personnel grant CTE funding to Robotics for use of and support for the CyberQuest software in APS classrooms.  APS paid Robotics under a series of procurement exemptions and sole source contracts and, later, APS Purchase Agreement #15278, and a professional services agreement, which **STAPLETON** administered.

   a.      Specifically, Robotics received approximately the following amounts from APS, most of which originated as federal Perkins funds, as described below:

| Year | Amount APS Paid to Robotics Overall | Amount of Perkins Funds APS Paid to Robotics |
|---|---|---|
| 04/17/2013 to 12/31/2013 | $295,500 | $135,500 |
| 2014 | $410,000 | $290,000 |
| 2015 | $348,000 | $348,000 |
| 2016 | $428,000 | $348,000 |
| 2017 | $388,000 | $308,000 |
| 2018 | $388,000 | $348,000 |
| 2019 | $266,950 | $266,950 |
| 2020 | $560,000 | $329,500 |
| 2021 | $167,100 | $144,600 |
| Total 2013-2021 | $3,251,550 | $2,518,550 |

   b.      The teachers who used CyberQuest wrote the content for their classes, and Robotics contracted with a third party to maintain the software and to train the users.  Until 2019, the third party received payments directly from APS for its work regarding CyberQuest.

   c.      From 2013 through 2021, Robotics spent about $174,915 on personnel other than **JOHNSON**, and paid the third party contractor about $182,180 to

support CyberQuest. Including miscellaneous expenses and unclassified withdrawals, Robotics' business expenses for that time period totaled about $806,558, leaving the remaining 73% of the funds Robotics received from APS – approximately $2,444,992 – available for other uses.

8.      **STAPLETON** reviewed and approved Robotics' invoices, and directed other APS employees under her supervision to approve those invoices, thereby certifying that APS had received the services listed in the invoices and certifying that APS should issue payments as requested by the invoices.

9.      APS mailed its checks to Robotics to a post office box in Albuquerque. **STAPLETON** personally retrieved the checks from the post office box and deposited them into the Robotics bank account.

10.     **STAPLETON** was provided with blank checks for the Robotics business checking account. Approximately 234 Robotics checks were written for **STAPLETON's** benefit, totaling approximately $1,152,506. In this manner, **STAPLETON** obtained approximately 35% of all funds APS paid to Robotics. Specifically:

   a.      Approximately 60 checks totaling about $286,772.20 were written from Robotics to S. Williams & Associates, a company **STAPLETON** owned and controlled.

   b.      Approximately 56 checks totaling about $313,123.48 were written from Robotics to Taste of the Caribbean, an Albuquerque restaurant that **STAPLETON** owned and her family members operated.

   c.      Approximately 105 checks totaling about $479,960.86 were written from Robotics and deposited into accounts for the Ujima Foundation, a nonprofit

entity that **STAPLETON** and **JOHNSON** were listed as operating together.

    i.    **STAPLETON** and **JOHNSON** were listed as operating Ujima Foundation as a 501(c)(3) nonprofit corporation nominally dedicated to addressing educational, social, economic and health issues facing people of color in New Mexico.

    ii.    **STAPLETON** and **JOHNSON** opened and maintained a bank account in the name of Ujima Foundation/Charlie Morrisey Foundation, for which they shared signature authority.

    iii.    In annual reports filed with the New Mexico Secretary of State's Office and in Forms 990-EZ filed with the IRS, **STAPLETON** identified members of the Ujima Foundation board of directors. Several of the individuals they identified were not affiliated with Ujima Foundation and did not know they were listed as board members.

    iv.    Over the time period in which **STAPLETON** deposited about $479,960.86 into the Ujima accounts, Ujima Foundation distributed about $46,700 in scholarships. The majority of the remaining funds went to **STAPLETON**'s benefit or was withdrawn in cash.

    d.    **STAPLETON** wrote about 12 checks totaling about $72,649.16 from Robotics to other parties providing goods and services to **STAPLETON**, including for a remodeling of **STAPLETON's** house.

11.    The 233 checks from Robotics paid to **STAPLETON**'s benefit, which totaled

approximately $1,152,506, were not business expenses for Robotics. Instead, **STAPLETON** accepted the checks and the money intending to be influenced and rewarded in connection with the APS contracts with and payments to Robotics.

12. Numerous federal and state regulations and policies prohibit a governmental employee involved in the selection, award, or administration of a contract from receiving any financial benefits, including bribes, kickbacks, gifts, and anything of monetary value, from a contractor, including:

      a. Title 2 C.F.R. § 200.318 et seq., general procurement standards for non-Federal entities receiving federal funds;

      b. The New Mexico Governmental Conduct Act, NMSA 1978 § 10-16-1 et seq.; and

      c. The Albuquerque Public Schools Employee Code of Conduct.

13. The New Mexico Financial Disclosure Act, NMSA 1978 § 10-16A-1 et seq., requires that a person holding state legislative office must disclose all sources of gross income over $5,000 each calendar year that person holds office. Despite this obligation, **STAPLETON** never disclosed the substantial income she received from Robotics.

<u>Count 1: Conspiracy to Defraud the United States</u>

14. Paragraphs 1 through 13 are hereby incorporated by reference.

15. From about 2013, and continuing thereafter until about July 2021, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, knowingly and willfully conspired and agreed together, and acted interdependently with each other, to defraud the United States of and concerning its governmental functions and rights to have its business and its affairs, and particularly the transaction of the

official business of the U.S. Department of Education, conducted honestly and impartially, free from corruption, fraud, improper and undue influence, and dishonesty.

Manner and Means

16.    It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the U.S. Department of Education in that the defendants would:

a.    Conceal their financial relationship by omitting that relationship from required certifications and disclosures;

b.    Sponsor and advocate for the passage of state legislation and capital outlays directing funding to APS for CTE programs;

c.    Allocate and direct APS CTE funding to Robotics;

d.    Invoice for, approve, facilitate, and deposit payments to Robotics in excess of services rendered and in excess of contract limits;

e.    Share and distribute proceeds using blank checks and pre-signed checks;

f.    Conceal distribution of proceeds by passing them through corporate bank accounts, including accounts in the names of S. Williams & Associates; Taste of the Caribbean; and Ujima Foundation;

g.    Maintain the Ujima Foundation, a registered nonprofit organization, as a vehicle to conceal and distribute proceeds; and

h.    Conceal income from disclosure on Internal Revenue Service tax forms and submissions.

Overt Acts

17.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the

following overt acts, among others, were committed in the District of New Mexico and elsewhere:

a. On or about January 15, 2019, **STAPLETON** co-sponsored House Bill 91, the Career Technical Education Pilot Project, which the legislature passed and the governor signed into law on March 15, 2019. This legislation created a new career technical education fund and caused NextGen state flow-through grant funds to pass through NMPED to the APS CTE department. Of these funds, Robotics received approximately $108,000 via APS contract #15278 and the Professional Service Agreement;

b. On or about January 24, 2019, **JOHNSON** submitted a proposal in response to APS Request for Proposals (RFP) 19-032 RMS, offering to provide CyberQuest software, training, and support to APS and certifying that there was no conflict of interest;

c. On or about April 4, 2019, after **STAPLETON**'s request, the legislature passed and the governor signed into law SB 280, appropriating in relevant part $1,628,227 in capital outlay funds to APS for CTE programs;

d. On or about June 4, 2019, APS and **JOHNSON** on behalf of Robotics entered into Professional Service Agreement #15278 for the provision of CyberQuest software, maintenance and technical support, professional development and software customizations, and certified that there was no conflict of interest;

e. On or about April 20, 2020, APS and **JOHNSON** on behalf of Robotics added an Amendment to Professional Service Agreement #15278, extending the contract;

f.    On or about May 20, 2021, **STAPLETON** on behalf of APS and **JOHNSON** on behalf of Robotics entered into a Professional Service Agreement for the provision of CyberQuest workshops and training;

g.    On or about July 21, 2021, **JOHNSON** on behalf of Robotics signed a second Amendment to Professional Service Agreement #15278, purporting to extend the contract;

h.    On or about the dates listed below, **STAPLETON** directed APS to issue purchase orders to encumber the funds for RMLS and approved them, each direction constituting a separate overt act:

| Purchase Order Date | Purchase Order # | Amount |
|---|---|---|
| June 13, 2019 | 181921249 | $266,950 |
| October 28, 2019 | 192008402 | $64,200 |
| February 3, 2020 | 192014614 | $145,000 |
| January 28, 2020 | 192013705 | $144,000 |
| April 17, 2020 | 192020707 | $85,500 |
| April 20, 2020 | 192021379 | $145,000 |
| January 27, 2021 | 202108937 | $208,200 |
| June 4, 2021 | 202110227 | $60,000 |

i.    **JOHNSON** created and **STAPLETON** approved invoices from Robotics to APS, as described below, each invoice constituting a separate overt act:

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| June 3, 2019 | 903715 | $266,950 |
| February 2, 2020 | 916110 | $145,000 |
| February 6, 2020, February 8, 2020, February 11, 2020, and February 27, 2020 | 916586 | $28,250 |
| March 28, 2020 | 917917 | $19,500 |
| April 30, 2020 | 919058 | $88,750 |
| May 7, 2020 | 919483 | $15,000 |
| May 19, 2020 | 920349 | $85,500 |

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| June 1, 2020, and June 3, 2020 | 921597 | $33,000 |
| September 4, 2020 | 923877 | $145,000 |
| March 14, 2021 | 931894 | $7,500 |
| April 6, 2021 | 933185 | $9,000 |
| March 25, 2021 | 933746 | $74,400 |
| June 18, 2021, June 21, 2021, and June 23, 2021 | 936513 | $76,200 |

j.  On or about June 23, 2021, **STAPLETON** and **JOHNSON** created and approved invoices 8240, 8241, and 8242 from Robotics to APS, each in the amount of $7,500 and each constituting an overt act;

k.  On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the deposits of the following checks into the Robotics bank account, each constituting a separate overt act:

| Deposited On or About | APS Check Number | Amount |
|---|---|---|
| June 18, 2019 | 903715 | $266,950 |
| March 2, 2020 | 916110 | $145,000 |
| March 27, 2020 | 916586 | $28,250 |
| April 20, 2020 | 917917 | $19,500 |
| May 21, 2020 | 919058 | $88,750 |
| May 21, 2020 | 919483 | $15,000 |
| June 19, 2020 | 920349 | $85,500 |
| July 14, 2020 | 921597 | $33,000 |
| October 13, 2020 | 923877 | $145,000 |
| May 11, 2021 | 931894 | $7,500 |
| May 11, 2021 | 933185 | $9,000 |
| May 11, 2021 | 933746 | $74,400 |
| July 6, 2021 | 936513 | $76,200 |

l.  On or about the dates listed below, **STAPLETON** and **JOHNSON** provided, issued, and deposited the following checks from the Robotics

bank account into accounts in **STAPLETON**'s control, each constituting a separate overt act:

| Robotics Check # | Check Dated | Deposited | Payee | Amount |
|---|---|---|---|---|
| 4072 | April 27, 2020 | May 1, 2020 | Charlie Morrisey Foundation | $3,800 |
| 4070 | May 14, 2020 | May 15, 2020 | Charlie Morrisey Foundation | $5,000 |
| 4073 | June 5, 2020 | June 12, 2020 | Ujima Foundation | $8,000 |
| 4076 | July 1, 2020 | July 14, 2020 | Ujima Foundation | $8,000 |
| 4075 | August 17, 2020 | August 24, 2020 | Ujima Foundation | $8,000 |
| 4081 | September 15, 2020 | October 13, 2020 | Ujima Foundation | $8,000 |
| 4080 | December 1, 2020 | December 21, 2020 | Charlie Morrisey Foundation | $8,000 |

m.   On or about January 31, 2020, **STAPLETON** filed a financial disclosure statement with the New Mexico Office of the Secretary of State, certifying that APS was her sole source of income in 2019;

n.   On or about the dates listed below, **STAPLETON** filed tax returns, IRS Form 1040, each constituting a separate overt act, in which she omitted income she received directly and indirectly from **JOHNSON** and Robotics, and therefore received tax refunds:

| Tax Year | Date Filed | Total Income Reported | Refund Amount |
|---|---|---|---|
| 2015 | May 21, 2018 | $39,123 | $7,231 |
| 2016 | May 18, 2020 | -$11,500 | $14,553 |
| 2017 | July 15, 2020 | -$1,922 | $13,496 |
| 2018 | August 20, 2020 | $7,178 | $10,855 |

o.   On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the filing of an IRS Form 990EZ on behalf of Ujima Foundation, each containing materially false and fraudulent representations and each constituting a separate overt act:

| Tax Year | Date Filed |
|----------|------------|
| 2017 | January 22, 2020 |
| 2018 | February 18, 2021 |
| 2019 | February 18, 2021 |

p.   On or about the dates listed below, **JOHNSON** filed tax returns, IRS Form 1040, omitting income he received from Robotics and APS, each containing materially false and fraudulent representations, and each constituting a separate overt act:

| Tax Year | Date Filed |
|----------|------------|
| 2013 | May 14, 2019 |
| 2014 | December 17, 2015 |
| 2020 | October 20, 2021 |

In violation of 18 U.S.C. § 371.

### Count 2-6:  Bribery Concerning Programs Receiving Federal Funds

18.   Paragraphs 1 through 17 are hereby incorporated by reference.

19.   At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020, and ending December 31, 2020.  Defendant was an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs.  On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, did

corruptly accept and agree to accept a thing of value from **JOSEPH JOHNSON**, to wit:  the Robotics Management Learning Systems business bank account checks identified below, intending to be influenced and rewarded in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|---|---|---|---|---|
| 2 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 3 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 4 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 5 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 6 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

Counts 7-11:  Bribery Concerning Programs Receiving Federal Funds

20.     Paragraphs 1 through 17 are hereby incorporated by reference.

21.     At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020, and ending December 31, 2020.  **SHERYL WILLIAMS STAPLETON** was an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs.  On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **JOSEPH JOHNSON**, did corruptly give, offer, and agree to give a thing of value to **STAPLETON**, to wit:  the Robotics Management Learning Systems business bank account checks identified below, intending to influence and reward her in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|---|---|---|---|---|
| 7 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 8 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 9 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 10 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 11 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

In violation of 18 U.S.C. § 666(a)(2).

<u>Counts 12-24:  Mail Fraud; Money and Property and Honest Services Fraud</u>

22.     Paragraphs 1 through 17 are hereby incorporated by reference.

23.     From on or about 2013, and continuing to about July 2021, in the District of New Mexico, and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, devised and intended to devise a scheme and artifice (1) to defraud the citizens of New Mexico, Albuquerque Public Schools, and the U.S. Department of Education of money and property and (2) to defraud and deprive the same of their right to the honest and faithful services of **STAPLETON** through bribery, kickbacks, and the concealment of material information.

24.     The purpose of the scheme and artifice was for **STAPLETON** to and **JOHNSON** to obtain money and property and for **STAPLETON** to secretly use her official positions to enrich herself by soliciting and accepting gifts, payments, and other things of value from **JOHNSON** in exchange for favorable official action, and for **JOHNSON** to enrich himself by secretly obtaining favorable official action for himself and his company, Robotics Management Learning Systems, through corrupt means.

25.     The scheme and artifice was carried out in the following manner and means, among others:

> a.     **STAPLETON** solicited and accepted gifts, payments, and other things of value totaling approximately $1,152,506 from **JOHNSON**.
>
> b.     **STAPLETON** provided favorable official action on behalf of **JOHNSON** as requested and as opportunities arose, including sponsoring, advocating for, and requesting legislation and capital outlays; requesting exemptions from procurement and sole source procurements; and creating, approving,

and directing others to enter purchase orders and approve invoices in excess of contract limits and in excess of services rendered.

c.   **STAPLETON** took steps to hide, conceal, and cover up her activity and the nature and scope of her dealings with **JOHNSON**, including omitting the income she received from **JOHNSON** from her financial disclosures and tax returns, signing **JOHNSON**'s name on checks, and passing proceeds through business entities she controlled.

d.   **JOHNSON** took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with **STAPLETON**, including by certifying a lack of conflict of interest on proposals and agreements, omitting income from Robotics on his tax returns, providing blank Robotics checks, pre-signing checks to be used for **STAPLETON**'s benefit, and passing proceeds through business entities **STAPLETON** controlled.

26.   On or about the dates listed below, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, caused another person to mail checks from APS to Robotics through the United States Postal Service, as described below:

| Count | Deposited On or About | APS Check Number | Amount |
|---|---|---|---|
| 12 | June 18, 2019 | 903715 | $266,950 |
| 13 | March 2, 2020 | 916110 | $145,000 |
| 14 | March 27, 2020 | 916586 | $28,250 |
| 15 | April 20, 2020 | 917917 | $19,500 |
| 16 | May 21, 2020 | 919058 | $88,750 |
| 17 | May 21, 2020 | 919483 | $15,000 |
| 18 | June 19, 2020 | 920349 | $85,500 |
| 19 | July 14, 2020 | 921597 | $33,000 |

| Count | Deposited On or About | APS Check Number | Amount |
|---|---|---|---|
| 20 | October 13, 2020 | 923877 | $145,000 |
| 21 | May 11, 2021 | 931894 | $7,500 |
| 22 | May 11, 2021 | 933185 | $9,000 |
| 23 | May 11, 2021 | 933746 | $74,400 |
| 24 | July 6, 2021 | 936513 | $76,200 |

In violation of 18 U.S.C. §§ 1341, 1346, and 2.

## Counts 25-27:  Fraud and False Statements

27.    On or about the dates below, in the District of New Mexico, in Bernalillo County, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service false U.S. Individual Income Tax Returns, Forms 1040, for the tax years identified below, verified by written declarations that the returns were made under the penalties of perjury, and which the defendant, **SHERYL WILLIAMS STAPLETON**, did not believe to be true and correct as to every material matter.  Those tax returns reported that the defendant had zero taxable income, whereas, as the defendant knew, she had received the approximate amounts of income described below from Robotics:

| Count | Date | Tax Year | Approximate amount of income received from Robotics |
|---|---|---|---|
| 25 | May 9, 2018 | 2015 | $186,553.94 |
| 26 | July 9, 2020 | 2017 | $133,392.04 |
| 27 | August 6, 2020 | 2018 | $150,056.70 |

In violation of 26 U.S.C. § 7206(1).

## Counts 28-36:  Money Laundering

28.    On or about the dates listed below, in the District of New Mexico, the defendants,

**SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, writing and depositing checks from the Robotics business account as described below, which involved the proceeds of a specified unlawful activity, that is, violations of 18 U.S.C. §§ 666 and 1341, while acting with the knowledge that the transaction was designed in whole or part to disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Check Dated | Check Posted | Robotics Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 28 | August 19, 2019 | September 9, 2019 | 4071 | Ujima Foundation | $1,500 |
| 29 | April 27, 2020 | May 1, 2020 | 4072 | Charlie Morrisey Foundation | $3,800 |
| 30 | May 14, 2020 | May 15, 2020 | 4070 | Charlie Morrisey Foundation | $5,000 |
| 31 | June 5, 2020 | June 12, 2020 | 4073 | Ujima Foundation | $8,000 |
| 32 | July 1, 2020 | July 14, 2020 | 4076 | Ujima Foundation | $8,000 |
| 33 | August 17, 2020 | August 24, 2020 | 4075 | Ujima Foundation | $8,000 |
| 34 | September 15, 2020 | October 13, 2020 | 4081 | Ujima Foundation | $8,000 |
| 35 | December 1, 2020 | December 21, 2020 | 4080 | Charlie Morrisey Foundation | $8,000 |
| 36 | July 1, 2021 | July 6, 2021 | 4077 | Ujima Foundation | $8,000 |

**UNITED STATES' REQUESTED INSTRUCTION NO. 25**, at 49-67, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.01**, at 33-34 (2026)(**RE: READING OF INDICTMENT**)(modified).

**SUPERSEDING INDICTMENT**, filed June 24, 2026 (Doc. 107)(modified)

**INSTRUCTION NO. 9**

You will note that the indictment charges that the crime of Conspiracy to Defraud the United States was committed from about 2013, and continuing until about July 2021; the crime of Bribery Concerning Programs Receiving Federal Funds occurred during the one-year period beginning January 1, 2020, and ending December 31, 2020; the crime of Mail Fraud; Money and Property and Honest Services Fraud from on or about 2013, and continuing to about July 2021; the crime of Fraud and False Statements on or about May 9, 2018, July 9, 2025, and August 6, 2020; the crime of Money Laundering on August 19, 2019, September 9, 2019, April 27, 2020, May 1, 2020, May 14, 2020, May 15, 2020, June 5, 2020, June 12, 2020, July 1, 2020, July 14, 2020, August 17, 2020, August 24, 2020, September 15, 2020, October 13, 2020, December 1, 2020, December 21, 2020, July 1, 2021, and July 6, 2021; and the crime of Conspiracy to Commit Money Laundering from on or about 2013, and continuing to about July 2021. The government must prove beyond a reasonable doubt that Ms. Stapleton committed Conspiracy to Defraud the United States reasonably near from about 2013, and continuing thereafter until about July 2021; the crime of Bribery Concerning Programs Receiving Federal Funds reasonably near the one-year period beginning January 1, 2020, and ending December 31, 2020; the crime of Mail Fraud, Money and Property and Honest Services Fraud reasonably near on or about 2013, and continuing to about July 2021; the crime of Fraud and False Statements on or about May 9, 2018, July 9, 2020, and August 6, 2020; the crime of Money Laundering reasonably near August 19, 2019, September 9, 2019, April 27, 2020, May 1, 2020, May 14, 2020, May 15, 2020, June 5, 2020, June 12, 2020, July 1, 2020, July 14, 2020, August 17, 2020, August 24, 2020, September 15, 2020, October 13, 2020, December 1, 2020, December 21, 2020, July 1, 2021, and July 6, 2021; and the Crime of Conspiracy to Commit Money Laundering reasonably near from on or about 2013, and continuing

to about July 2021.

**UNITED STATES' REQUESTED INSTRUCTION NO. 9**, at 21, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.18**, at 28 (2026)(**ON OR ABOUT**)(modified to replace "government" with "United States").

- 29 -

**INSTRUCTION NO. 10**

You are here to decide whether the government has proved beyond a reasonable doubt that Ms. Stapleton and Mr. Johnson are guilty of the crime charged. Ms. Stapleton and Mr. Johnson are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

**UNITED STATES' REQUESTED INSTRUCTION NO. 11**, at 23, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.19**, at 29 (2026)(**CAUTION -- CONSIDER ONLY CRIME CHARGED**)(modified to replace "government" with "United States").

**INSTRUCTION NO. 11**

A separate crime is charged against Ms. Stapleton or Mr. Johnson or both in each count of the indictment. You must separately consider the evidence against Ms. Stapleton and Mr. Johnson on each count and return a separate verdict for Ms. Stapleton and Mr. Johnson.

Your verdict as to Ms. Stapleton and Mr. Johnson or any count, whether it is guilty or not guilty, should not influence your verdict as to Ms. Stapleton or Mr. Johnson or any counts, unless I expressly instruct you otherwise.

**UNITED STATES' REQUESTED INSTRUCTION NO. 12**, at 24, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.22**, at 32 (2026)(**MULTIPLE DEFENDANTS -- MULTIPLE COUNTS**)(adapted).

**INSTRUCTION NO. 12**

If you find Ms. Stapleton and/or Mr. Johnson guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**UNITED STATES' REQUESTED INSTRUCTION NO. 13**, at 25, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.20**, at 30 (2026)(**CAUTION -- PUNISHMENT(Non-Capital Cases)**)(adapted).

## INSTRUCTION NO. 13

In a moment, the court security officer will escort you to the jury room and provide each of you with a copy of the instructions I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson who will help guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts. You must decide whether the government has proved Ms. Stapleton and Mr. Johnson guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

**[EXPLAIN THE VERDICT FORM]**

- 33 -

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

**UNITED STATES' REQUESTED INSTRUCTION NO. 26**, at 68-69, filed July 9, 2026 (Doc. 127)(modified)

Tenth Circuit Pattern Jury Instructions Criminal **1.23**, at 33-34 (2026)(**DUTY TO DELIBERATE -- VERDICT FORM**).